IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Lori HAJDU,<br><br>    Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY *et al.*,<br><br>    Defendants. | Civil Action No. 15-195 |

**MEMORADUM OPINION**

CONTI, Chief Judge

## I. Introduction

Pending before the court is a motion to dismiss (ECF No. 5) filed by defendants Metropolitan Life Insurance Company and Metlife, Inc. (collectively "Metlife"). On February 12, 2015, Metlife removed this action from state court. (ECF No. 1.) The complaint filed by plaintiff Lori Hajdu ("plaintiff") seeks damages for breach of contract, violation of the Pennsylvania insurance bad faith statute, and equitable estoppel. On April 9, 2015, the court held a hearing on this matter. For the reasons set forth below, the court will grant the motion to dismiss.

## II. Facts as Alleged in the Complaint

The following facts, set forth in the complaint, are accepted as true for purposes of resolving the motion to dismiss. Plaintiff's husband, William Hajdu, died in 2012. (Compl. ¶ 2, ECF No. 1-2.) William Hajdu worked for the United States Department of Defense for more than twenty years. (Compl. ¶ 7.) William Hajdu elected to participate in the Federal Employee Group Life Insurance ("FEGLI") program. (Compl. ¶ 8.) The FEGLI program was administered by Metlife. (Compl. ¶ 6.) Under the terms of the FEGLI program, William Hajdu selected three coverage options: Basic coverage, which provides a death benefit equal to the insured's annual salary,

rounded to the nearest thousand dollars plus $2,000; Option A, which provides an additional death benefit of $10,000; and Option B, which provides an additional death benefit of one to five times the insured's annual salary, rounded to the nearest thousand dollars. (Compl. ¶ 10.) William Hajdu selected Option B coverage of twice his annual salary. (*Id.*) Plaintiff was the beneficiary of the life insurance policy. (Compl. ¶ 9.)

On September 30, 2010, William Hajdu separated from federal service with the Department of Defense. (Compl. ¶ 11.) William Hajdu continued to be covered by the FEGLI policy after separating from federal service, and his life insurance premiums were deducted from his retirement annuity. (Compl. ¶ 13.)

On January 31, 2011, William Hajdu commenced employment with the Defense Contract Management Agency. (Compl. ¶ 15.) William Hajdu enrolled in the FEGLI program and selected coverage identical to his coverage from his employment with the Department of Defense. (Compl. ¶ 16.) Premiums for this coverage were deducted from his pay. (*Id.*) William Hajdu requested that deductions from his retirement annuity cease, but this request was not acted upon until after his death. Until the time of his death, premium payments were deducted both from his retirement annuity and his salary. (Compl. ¶ 18.)

After William Hajdu died, plaintiff submitted applications for life insurance benefits under both the annuitant policy and the emplymee policy to Metlife. (Compl. ¶ 21.) On February 13, 2013, Metlife paid life insurance benefits of $231,155.07 to plaintiff. This benefit was for the FEGLI policy for William Hajdu's employment with the Defense Contract Management Agency and was based upon William Hajdu's annual rate of pay at the time of death. (Compl. ¶ 22.) On May 15, 2013, Metlife refused to pay benefits in the amount of $226,000 due under the FEGLI policy for William Hajdu's retirement from the Department of Defense. (Compl. ¶ 23.) Metlife tendered to plaintiff a refund of $2,615.70 for premiums collected from

William Hajdu's retirement annuity from January 31, 2011, to December 27, 2012. (Compl. ¶ 24.)

Metlife asserts that the refund discharged its obligations under the retirement FEGLI policy. Plaintiff asserts that Metlife's failure to pay the $226,000 death benefit breached the terms of the insurance policy, violated state and federal law, and constituted bad faith under 42 Pa. Cons. Stat. § 8371.

### III.  Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The court primarily considers the allegations of the complaint, but the court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004); *see Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("'Documents that the defendant attaches to the motion to dismiss *are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim*; as such they may be considered by the court.'" (quoting Federal Procedure § 62:508 (Lawyers' ed. 1996))).

In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action

will not do." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556–57) (internal citation omitted). Two working principles underlie *Twombly*. *Id.* First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions.

> While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

4

*Id.*

## IV. Discussion

The claims in the complaint are somewhat undifferentiated. To the best of the court's reading of the complaint, plaintiff asserts claims for breach of contract, insurance bad faith under 42 Pa. Cons. Stat. § 8371, and equitable estoppel. The complaint alleges that Metlife's conduct was "a violation of the terms and conditions of the Defendants' contract with the Federal Government to administer the FEGLI program." (Compl. ¶ 27.) The complaint asserts that "Plaintiff reasonably and justifiably relied upon the policies/coverages provided and paid for, and said policies/coverages are irrevocable and non-voidable on the basis of such reliance." (Compl. ¶ 27d.)

Metlife argues that the terms of the contract, which specifically incorporate certain federal statutes and regulations, provide that the FEGLI policy William Hajdu had as an annuitant was suspended when he was reemployed by the government and plaintiff is not entitled to benefits of two separate policies. Metlife additionally argues that the claims under state law must be dismissed because they are preempted by federal law.

### A. *Breach of the FEGLI Contract*

Metlife asserts that the complaint fails to state a claim for breach of contract because plaintiff is not entitled to recover two insurance benefits under the applicable federal statute, Office of Personnel Management regulations, and terms of the contract between the government and Metlife. Metlife attached the FEGLI contract between it and the Office of Personnel Management to its motion to dismiss. Because the complaint refers to the contract and the contract is central to the claim, the court can consider it in deciding the motion to dismiss. *Pryor*, 288 F.3d at 560.

1. *Applicable Contract Law*

The parties disagree about what law applies to the interpretation of the contract. Metlife asserts that the contract "must be construed in accordance with federal law." (ECF No. 6, at 12.) Plaintiff contends that Pennsylvania insurance-law principles apply. (ECF No. 11, at 2.) The court need not resolve this question, however, because the basic principles of contract interpretation applicable to this case are the same under both federal and state law.

Under Pennsylvania law, "'the fundamental rule in contract interpretation is to ascertain the intent of the contracting parties.'" *Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 342 (Pa. 2011) (quoting *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006)).[1] "'[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone.'" *Id.* (quoting *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)). Similarly, under federal common law, "'[t]he paramount goal of contract interpretation is to determine the intent of the parties.'" *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011) (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009)). "The strongest objective manifestation of intent is the language of the contract." *Id.* "[W]here the words of the contract clearly manifest the parties' intent, a court need not 'resort to extrinsic aids or evidence.'" *Id.* (quoting *Am. Eagle Outfitters*, 584 F.3d at 587). Thus, under both Pennsylvania and federal law, the court must construe an unambiguous contract in accord with its terms as written. If a contract is ambiguous, the court considers extrinsic evidence to resolve the ambiguity. *Yocca v. Pittsburgh*

---

[1] The contract at issue is between the government and Metlife. Neither party addressed the standing of plaintiff with respect to the breach of contract claim. Metlife's obligation under the contract is to execute coverage decisions made by the Office of Personnel Management. The contract provides that "[t]he amount of insurance payable shall be based on the insurance coverage certified by OPM and/or the appropriate Government Agency" and Metlife "shall pay Benefits in accordance with the information on that certification." (FEGLI Contract §§ 2.3, 2.4, ECF No. 5-1, at 19.) Because the court is granting the motion to dismiss, however, it need not independently address these issues.

*Steelers Sports, Inc.*, 854 A.2d 425, 437 (Pa. 2004) (applying Pennsylvania law); *Baldwin*, 636 F.3d at 76 (applying federal law to interpret a contract under the Employee Retirement Income Security Act). If a contract term is ambiguous, the court should permit the parties "to proffer evidence in support of alternative interpretations of the term so that the court may properly address the purported ambiguity." *Baldwin*, 636 F.3d at 78.

  2. *Provisions of the Contract*

The contract incorporates by reference Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. §§ 8701–8716, and regulations enacted by the Office of Personnel Management under FEGLIA, among other regulations. The contract provides that the statute and regulations "constitute a part of this Contract as if fully set forth herein, and the other provisions of the contract shall be construed so as to comply therewith." (FEGLI Contract § 1.3, ECF No. 5-1, at 3.)

Under the applicable regulations, when a retired federal employee entitled to an annuity (i.e., an "annuitant") is rehired by the government, "the amount of his or her Basic life insurance as a [sic] annuitant … (and any applicable withholdings) is suspended on the day before the 1st day in pay status under the appointment, unless the reemployed annuitant … waives all insurance coverage as an employee." 5 C.R.F. § 870.707(a)(1). Likewise, "[i]f the individual has Option A or C as an annuitant, that insurance (and applicable withholdings) is suspended on the day before his or her 1st day in pay status under the appointment. Unless he or she waives Option A or C (or waives Basic insurance), the individual obtains Option A or C as an employee." 5 C.F.R. § 870.707(d)(2). With respect to Option B insurance,

> [i]f the individual has Option B as an annuitant … that insurance (and applicable withholdings) continues as if the individual were not reemployed, unless: (i) The individual files with his/her employing office an election of Option B, in a manner designated by OPM, within 60 calendar days after the date of reemployment. In this case Option B (and applicable withholdings) as an annuitant … is suspended on

7

> the date that Option B as an employee becomes effective; or
> (ii) The individual waives Basic insurance.

5 C.F.R. § 870.707(d)(3). Thus, once a rehired employee files an election of coverage, coverage as an annuitant is suspended for Basic, Option A, and Option B coverage.

In a decision addressing a similar factual situation, another district court in this circuit reached the same conclusion. *Brown v. Metro. Life Ins. Co.*, Civil No. 94-7693, 1995 WL 298220 (E.D. Pa. May 10, 1995). In *Brown*, the plaintiff's husband, Lawrence Brown, worked for the Secret Service and selected Basic, Option A, and Option B coverage. After his retirement, his coverage continued and premiums were deducted from his retirement annuity. Brown accepted employment with the U.S. Postal Service and selected FEGLI insurance through his new employment. As in this case, premiums were deducted both from his salary and his annuity. After his death, the Office of Personnel Management determined that Brown's beneficiaries were entitled to the benefits of one policy, the greater of his annuitant coverage and employee coverage. One of Brown's beneficiaries sued the government and Metlife to recover benefits due under the "other" policy or, alternatively, the premiums deducted for the second policy under theories of breach of contract, estoppel, negligence, and violations of FEGLIA.

The main import of the claims against Metlife was "whether FEGLIA permits multiple life insurance policies to cover retired employees who subsequently accept reemployment with the federal government." *Id.* at *3. The court held that only one policy was in effect under FEGLIA and the applicable regulations. *Id.* at *4. The court granted Metlife's motion for judgment on the pleadings with respect to the claims for breach of contract and violation of FEGLIA because the court agreed with the determination of Office of Personnel Management that "federal employees may be insured under only one policy at a time." *Id.* at *3.

In her response brief, plaintiff concedes that the regulations suspend Basic insurance coverage when a former employee with annuitant coverage is rehired by the

government. (ECF No. 11, at 6.) The same logic applies to Option A: the Option A insurance as an annuitant is suspended once Option A insurance as an employee takes effect. Plaintiff argues, however, that the complaint states a viable claim with respect to Option B. Plaintiff notes that the regulation provides for the continuance of Option B coverage as an annuitant unless the rehired employee (1) files an election for Opinion B coverage as an employee or (2) waives all coverage. Plaintiff argues there is no allegation in the complaint that William Hajdu waived coverage or filed the proper election form within the required 60-day period. (*Id.* at 7.) Plaintiff asserts the facts in this situation are distinguishable from those in the *Brown* decision because Brown "executed an election form for Option B insurance" upon his reemployment by the government. *Brown*, 1995 WL 298220, at *2. Plaintiff argues the court has "no basis to conclude as a matter of law that [William Hajdu's] coverage as an annuitant was suspended, cancelled, or otherwise revoked as of the time of his death." (ECF 11, at 9.)

Plaintiff's argument does not support a plausible claim to relief with respect to a claim for breach of the FEGLI contract. Paragraph 16 of the complaint alleges that William Hajdu was enrolled in the FEGLI program with coverage identical to his previous elections:

> At the time he accepted new employment as a Contract Administrator for the Defense Contract Management Agency, William Hajdu was deemed eligible for and was enrolled in the FEGLI program as a federal employee with a life insurance policy/coverage identical to that previously selected by him during his prior employment, and premiums for this separate life insurance policy/coverage began to be deducted from his pay.

(Compl. ¶ 16, ECF No. 1-2.) The complaint alleges that plaintiff received benefits based upon an Option B election of twice William Hajdu's salary. The most reasonable inference from the allegations in the complaint is that an election for Option B coverage was filed, which suspended his annuitant Option B coverage.

9

Plaintiff's speculation that William Hajdu might not have filed an election or might have done so outside of the 60-day period is insufficient show a plausible claim to relief for breach of contract. If no election was filed, William Hajdu would be entitled to his annuitant Option B coverage—which in this case would have been less than his employee Option B coverage—and not employee Option B coverage. Under no circumstances is a rehired federal employee eligible for Option B benefits as both an employee and an annuitant.

### B. Claim Under the Pennsylvania Insurance Bad Faith Statute

The Pennsylvania insurance bath faith statute provides that, "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured," the court may award interest and punitive damages and may assess court costs and attorney fees. 42 PA. CONS. STAT. § 8371. To recover for a first-party insurance bad faith claim, the insured must prove, by clear and convincing evidence: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Since, as a matter of law, Metlife did not breach the FEGLI contract by not paying benefits under William Hajdu's annuitant policy, no claim for bad faith can be established.

Even assuming that breach of contract could be proved, federal law preempts the state bad faith claim. In general, federal preemption is an affirmative defense to a claim. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). The court may grant a motion to dismiss based upon an affirmative defense when the affirmative defense appears on the face of the complaint. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 588, 859 (3d Cir. 1994).

FEGLIA contains an express preemption provision:

> The provisions of any contract under [FEGLIA] which relate to the nature or extent of coverage or benefits (including

> payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. § 8709(d)(1). The contact also includes a preemption provision:

> [FEGLIA], Regulations [under FEGLIA], and this Contract supersede and preempt any law or regulation of any State which relates to the provision and administration of group life insurance, including but not limited to the payment of benefits or any other matter which relates to [Metlife's] review, processing, or administration of a claim.

(FEGLI Contract § 1.3(d), ECF No. 5-1, at 3.) The court is not aware of any decision in which a court has analyzed whether FEGLIA preempts 42 Pa. Cons. Stat. § 8371. Courts have, however, found it expressly preempted by similar statutes.

In *Barber v. Unum Life Insurance Company of America*, 383 F.3d 134 (3d Cir. 2004), the Court of Appeals for the Third Circuit found that the preemption provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a) expressly preempted 42 Pa. Cons. Stat. § 8371. The ERISA preemption provision states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a). This provision also contains a savings clause providing that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). This savings clause did not apply to § 8371. *Barber*, 383 F.3d at 141. Accordingly, § 8371 was expressly preempted by ERISA. *Id.* at 144. The court of

appeals alternatively held that § 8371 is subject to conflict preemption by ERISA. *Id.* at 141.

In *Negron v. Patel*, 6 F. Supp. 2d 366 (E.D. Pa. 1998), the court interpreted the preemption provision of the Federal Employees Health Benefit Act ("FEHBA"), 5 U.S.C. §§ 8901–8914. That provision stated:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

5 U.S.C. § 8902(m)(1) (1994).[2] The court applied this provision to 42 Pa. Cons. Stat. § 8371 and found it to be "a relatively easy case" for preemption because § 8371 "is clearly a law that relates to insurance plans in a meaningful way" and § 8371 permits "damages other than contract damages for the denial of claims under a FEHBA plan." *Negron*, 6 F. Supp. 2d at 370.

Based upon the reasoning in *Barber* and *Negron*, the court finds that 42 Pa. Cons. Stat. § 8371 is expressly preempted by FEGLIA. Section 8371 relates to group life insurance as meaningfully as it relates health insurance. It conflicts with the FEGLI contract, which limits the recovery in any action that relates to the FEGLI program to "the benefit that would be payable under the FEGLI Program" and ex-

---

2   This provision was amended by the Federal Employees Health Care Protection Act of 1998, Pub. L. 105-266, 112 Stat. 2363, 2366. It now states:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). The pre-amendment language analyzed by the court in *Nigron* is closer to the provision at issue in this case, 5 U.S.C. § 8709(d)(1).

pressly prohibits recovery of "extra-contractual, punitive, compensatory, consequential damages, or attorneys' fees." (FEGLI Contract § 1.17, ECF No. 5-1, at 11.) The claim under 42 Pa. Cons. Stat. § 8371 will therefore be dismissed with prejudice.

### C. Equitable Estoppel

In plaintiff's response brief, plaintiff argues "there is a factual basis to conclude that [William Hajdu] was aware that two premiums were being collected and believed that this would entitle him to additional life insurance benefits if not corrected." (ECF No. 11, at 11.) Plaintiff points to paragraph 27(d) in the complaint, which states that "Plaintiff reasonably and justifiably relied upon the policies/coverages provided and paid for, and said policies/coverages are irrevocable and non-voidable on the basis of such reliance." (Compl. ¶ 27d.)

To the extent plaintiff is asserting that Metlife is estopped from denying the existence of the second life insurance policy, the court finds this claim inadequately pleaded. The elements of a traditional estoppel claim are "(1) a misrepresentation by another party; (2) which [the plaintiff] reasonably relied upon; (3) to [the plaintiff's] detriment." *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987). The party claiming estoppel has the burden of proof. *Id.* The averment in paragraph 27(d) of the complaint is conclusory not sufficient to establish a plausible claim to relief. Plaintiff did not identify any particular misrepresentation made by Metlife. Moreover, plaintiff did not allege in the complaint that William Hajdu's reliance on a misrepresentation by Metlife's was detrimental—for example, that William Hajdu forwent acquiring additional life insurance elsewhere based upon his reliance on two FEGLI policies being in effect. At the hearing on this motion, counsel for plaintiff argued that there was evidence William Hajdu relied on the presumed additional coverage to his detriment. The court granted leave for plaintiff to file an amended complaint with respect to the equitable estoppel issue on or before May 1, 2015. Plaintiff did not do so, and counsel for plaintiff informed the court that no amended complaint would be filed. The equitable estoppel claim will be dismissed with prejudice.

## V. Conclusion

For the reasons set forth above, the court will grant Metlife's motion to dismiss in its entirely and dismiss the complaint with prejudice. An appropriate order will be entered.

Dated: May 6, 2015    /s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge